**FILED**

**December 29, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:47 P.M. EASTERN**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **FREDIA DARLENE EAVES,** | ) | **Docket No.: 2016-03-1427** |
| Employee, | ) | |
| **v.** | ) | |
| **AMETEK,** | ) | **State File No.: 2405-2016** |
| Employer, | ) | |
| **and** | ) | |
| **TRUMBULL INSURANCE CO.,** | ) | **Judge Pamela B. Johnson** |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the undersigned Workers' Compensation Judge on December 19, 2017, for an Expedited Hearing. The central legal issue is whether Fredia Darlene Eaves demonstrated she is likely to prevail at a hearing on the merits that her injury arose primarily out of and in the course and scope of her employment with Ametek, and, if so, whether she is entitled to medical and temporary disability benefits. For the reasons set forth below, the Court holds Ms. Eaves demonstrated she is likely to prevail at a hearing on the merits and grants her the requested benefits at this time.

### History of Claim

Ms. Eaves worked for Ametek as a manufacturing buyer. On January 6, 2016, she fell while crossing the crosswalk to Ametek's parking lot after work. She landed on her left side injuring her left knee. She reported the incident the following day to her supervisor, Michael Hurt. Initially, she believed the incident was not "work-related" because she was not "working" when the incident occurred and thought the street and parking lot were not owned by Ametek. She later learned she fell on Ametek property and made a claim for workers' compensation benefits, which Ametek denied on January 14.

The parties dispute whether a defect existed in the parking lot to cause the fall. Ms. Eaves testified she began to cross the crosswalk when she felt her right heel catch in

1

a crack in the asphalt. She indicated it was very dark when she left work and described poor lighting in the parking lot.

Ametek denied a defect existed in its crosswalk or parking lot asphalt. It pointed to the investigation of its safety manager, Dan Jones, who investigated the incident with Mr. Hurt. They inspected the parking lot and lighting at the same time of day as Ms. Eaves' fall. Mr. Jones determined no defects existed that required repair of the crosswalk or parking lot asphalt and that sufficient lighting existed in the area. He testified he found "dark lines" in the crosswalk without separation or uneven surface.

The photographs below depict, in part, the area in question.



The next day, Ms. Eaves presented to Fort Loudoun Medical Center (FLMC) with reports of injury to her left knee, left hip, and inguinal area. FLMC providers noted tenderness to the entire left knee with mild swelling, abrasion, and bruising below the left patella. The providers discharged Ms. Eaves with instructions to follow up with her primary care physician and assigned restrictions to limit left leg use and limit weight bearing on the left leg until January 18, 2016.

Ms. Eaves sought care on her own with orthopedic surgeon Dr. Harold Cates in March with continued complaints of left knee pain. She explained the delay in care due

to difficulties obtaining an appointment with an orthopedic surgeon. Dr. Cates diagnosed moderate left knee patellofemoral arthritis, recent left knee injury with effusion and probable medical meniscal tear, and lumbar strain. He injected her left knee and recommended a left knee MRI scan if her pain did not improve.

Ms. Eaves returned to Dr. Cates in December. She reported improvement following the injection but not full relief and reported pain, locking, catching, and swelling in the left knee. Dr. Cates administered a hyaluronic acid injection and ordered physical therapy. He also ordered a MRI scan, which showed moderate medical compartment patellofemoral arthritis, subchondral cysts, trochlea marrow edema, chronic sprain of the posterior cruciate ligament, and a Baker's cyst. Dr. Cates later indicated he felt Ms. Eaves had a meniscal tear related to the fall and required "surgical intervention as a result of the fall, which caused an injury to her left knee."

On April 4, 2017, Ms. Eaves presented to her primary care physician, Dr. Johnathan Hutchings, for ongoing left knee symptoms and the left knee cyst. She requested, and Dr. Hutchings agreed, a second opinion was appropriate for evaluation of the Baker's cyst. Dr. Hutchings noted Ms. Eaves had no prior knee problems before the January 6, 2016 fall.

Orthopedic surgeon Dr. Michel J. McCollum saw Ms. Eaves for a second opinion on April 21 concerning her large Baker's cyst. Dr. McCollum diagnosed left knee mild medial and patellofemoral arthritis. Dr. McCollum indicated removal of Baker's Cyst would not alleviate her arthritic-type knee pain and recommended conservative treatment.

Ametek asserted Ms. Eaves injured her left knee while renovating rental property. Ms. Eaves denied physically performing the work on her rental property. Mr. Jones testified he observed Ms. Eaves sometime after the fall dressed casually after lunch with what appeared to be pink insulation on her person. He recalled Ms. Eaves stating she met a plumber or electrician at the rental property during lunch. Mr. Hurt testified Ms. Eaves requested a day off in March to finish painting before the renter moved in.

### Findings of Fact and Conclusions of Law

Ms. Eaves bears the burden of proving all essential elements of her claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At an Expedited Hearing, however, her burden of proof requires her only to come forward with sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). This lesser evidentiary standard does not relieve Ms. Eaves of the burden of producing evidence of an injury by accident arising primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be

3

granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

An injury must arise primarily out of and in the course and scope of the employment to be compensable under the Workers' Compensation Law. The term "injury" is defined as an injury by accident arising primarily out of and in the course and scope of employment that causes the need for medical treatment. For an injury to be accidental, it must be caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. *See* Tenn. Code Ann. § 50-6-102(14) (2017).

The record is clear when and where the incident occurred. Ms. Eaves' heel caught in a crack in the crosswalk and she fell on her left side, injuring her left knee on January 6, 2016. The Court therefore concludes that Ms. Eaves demonstrated she is likely to prevail at a hearing on the merits in proving a specific incident, identifiable by time and place of occurrence.

The dispute is whether Ms. Eaves' injury arose out of her employment. Ametek asserted Ms. Eaves' fall resulted from an idiopathic condition. Tennessee law defines an idiopathic condition to mean one of "unexplained origin or cause." *Osborne v. Beacon Transp., LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 49, at *6 (Sept. 27, 2016) (internal citations omitted). An idiopathic condition "is compensable if an employment hazard causes or exacerbates the injury." *Id.* The pertinent inquiry is not what caused the idiopathic condition, but what caused the employee's injury. *Id.* at *7.

Here, Ms. Eaves asserted she fell while crossing the crosswalk because her right heel caught in a crack. She indicated it was dark outside with poor lighting. Ametek denied the existence of cracks or other defects in the crosswalk, instead referring to "dark lines" and argued the lighting was sufficient. The Court finds Ametek's description unpersuasive, as the photographs depict cracks, not "dark lines," existed in the crosswalk. The Court further finds Ms. Eaves credible. She appeared calm, at ease, self-assured, confident, and forthcoming. Her explanations were reasonable. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014).

While the parties disputed the cause of Ms. Eaves' fall, the cause of her injuries is not in dispute. She fell and sustained injury to her left knee after her right heel caught in a crack in the crosswalk and caused her to fall on her left side. Ametek suggested the cause of her injuries was work she performed renovating rental property. Dr. Hutchings indicated she had no prior problems with her left knee before the fall, and Dr. Cates stated the fall caused her symptoms and need for surgery. Accordingly, the Court finds her injuries arose primarily from a hazard incident to employment: defects in the crosswalk as depicted in the photographic evidence.

4

Applying the rationale of *Osborne*, the Court concludes Ms. Eaves demonstrated she is likely to prevail at a hearing on the merits that her injuries arose primarily out of and in the course and scope of her employment with Ametek.

Turning to Ms. Eaves' medical benefits request, the Court finds Ms. Eaves was reasonable in seeking medical treatment on her own once Ametek denied her claim. Accordingly, the Court holds Ametek must provide her reasonable and necessary medical treatment related to the injury and shall authorize treatment with Dr. Cates as the authorized treating physician. *See Young v. Young Electric Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 24 (May 25, 2016). Because Ms. Eaves did not introduce evidence as to past medical expenses related to her injury, the Court denies her request for reimbursement at this time. Ms. Eaves may pursue her claim for reimbursement of past medical expenses at a later date.

The parties agreed to reserve the issue of temporary disability benefits for later determination.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ametek shall provide Ms. Eaves with medical treatment as required by Tennessee Code Annotated section 50-6-204. Dr. Cates shall become the authorized treating physician.

2. This matter is set for a Scheduling Hearing on **February 22, 2018**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, the parties shall contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED December 29, 2017.**

PAMELA B. JOHNSON, JUDGE
Court of Workers' Compensation Claims

## APPENDIX

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Objections to Request for Expedited Hearing with a Decision on the Record
5. Employer's Statement
6. Employer's Witness and Exhibit Lists
7. Notice of Joint Filing of Medical Records
8. Employer's Prehearing Brief and Memorandum of Law

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. Affidavit
2. Photographs
3. AMT Accident Investigation Report and Photographs
4. First Report of Work Injury
5. Supervisor's Report of Incident
6. Video
7. Wage Statement
8. Text Messages
9. Jointly-Filed Medical Records

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on December 29, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Joshua J. Bond, Employee's Attorney | | | X | jbond@hdclaw.com |
| Lynn C. Peterson, Employer's Attorney | | | X | lpeterson@lewisthomason.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

7